UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | No. 3:03-CR-151 |
| | ) | |
| SPENCER L. COON | ) | |

## MEMORANDUM OPINION

Now before the Court is the defendant's *pro se* motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). [Doc. 65]. The United States has responded in opposition to the motion. [Doc. 69]. An additional letter of support has been filed on the defendant's behalf [doc. 70], but the defendant has not otherwise replied within the time allowed by this court's Local Rules.

The matter is now ripe for the Court's consideration. For the reasons stated below, the defendant's motion for compassionate release will be granted.

## I. BACKGROUND

In 2004, this Court sentenced the defendant to a net term of 480 months' imprisonment. That sentence consisted of concurrent 120-month terms for methamphetamine offenses, followed by consecutive terms of five and 25 years for violations of 18 U.S.C. § 924(c) (carrying firearms during and in relation to drug trafficking crimes).

The defendant is presently housed at FCI Manchester with a projected release date of November 23, 2041. *See* Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Feb. 17, 2021). He moves for compassionate release due his rehabilitative efforts

and family health concerns. The defendant also argues that he would receive a significantly lesser term of imprisonment if sentenced today under current law. Lastly, he claims that he misunderstood, or was misinformed about, his charges and that his attorney should have argued for his sentence to run concurrently with various state cases.

## II. COMPASSIONATE RELEASE

Section 3582(c)(1)(A)(i) of Title 18, United States Code, allows district courts to consider prisoner motions for sentence reduction upon a finding of "extraordinary and compelling reasons." That statute, as amended by the First Step Act of 2018, provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons ["BOP"], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission....

18 U.S.C. § 3582(c)(1)(A)(i). Prior to the First Step Act, a motion for compassionate release could only be brought by the BOP Director, not a defendant. *See* 18 U.S.C. § 3582(c)(1)(A) (2017). The First Step Act amended § 3582(c)(1)(A) to allow a defendant to file a motion for compassionate release after first asking the BOP to file such a motion on his behalf. *See, e.g., United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020).

The United States Sentencing Commission has promulgated a policy statement regarding compassionate release under § 3582(c), which is found at U.S.S.G. § 1B1.13 and the accompanying application notes. District courts in this circuit have previously turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction but, as of November 20, 2020, are no longer to do so, at least as to compassionate release motions filed by defendants (rather than by the BOP). *See United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020) ("[H]olding" that guideline 1B1.13 "is not an 'applicable' policy statement when an imprisoned person files a motion for compassionate release."); *accord United States v. Elias*, 984 F.3d 516 (6th Cir. 2021).[1] "District courts should [still] consider all relevant § 3553(a) factors before rendering a compassionate release decision." *Jones*, 980 F.3d at 1114.

### A. Exhaustion

The defendant has previously submitted a compassionate release request to the BOP, and more than 30 days have passed since that request was received by the warden. [Doc. 65, Ex. A]. The Court thus has authority under § 3582(c)(1)(A) to address the instant motion. *See Alam*, 960 F.3d at 832.

### B. Merits

As mentioned above, in support of his motion the defendant cites his rehabilitative efforts and family health concerns. He also argues that he would receive a significantly lesser term of imprisonment if sentenced today under current law. Lastly, the defendant

---

[1] The parties in this case have not addressed any guideline policy statement other than § 1B1.13.

claims that he misunderstood, or was misinformed about, his charges and that his attorney should have argued for his sentence to run concurrently with various state cases.

Consistent with § 3582 and the Sixth Circuit's directive, this Court has considered the parties' arguments and the broader facts of this case in light of the pertinent § 3553(a) factors. Pursuant to 18 U.S.C. § 3553(a),

> The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> >
> > (B) to afford adequate deterrence to criminal conduct;
> >
> > (C) to protect the public from further crimes of the defendant; and
> >
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—
>
> > (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
> >
> > > (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
> > >
> > > (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; . . .

4

. . .

    (5) any pertinent policy statement—

        (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

        (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

    (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

    (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Unlike most movants, the instant defendant does not cite the risk of COVID-19 as a basis for compassionate release. The Court does note, however, that the defendant contracted the virus in July 2020. [Doc. 65, Ex. G]. It appears that he remained asymptomatic. [*Id.*]. The defendant also has mild glaucoma, some osteoarthritis, and chronic asymptomatic hepatitis C. [*Id.*]. Together, these facts illustrate the danger of COVID-19 in the prison setting but in no way amount to extraordinary and compelling circumstances justifying compassionate release. *See, e.g., United States v. Shah*, No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. April 22, 2020) ("[S]peculation as to . . . whether Defendant will contract COVID-19, and whether he will develop serious complications, does not justify the extreme remedy of compassionate release."); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot

5

independently justify compassionate release[.]").

The Court notes the defendant's concern for the health of his mother and grandmother. While admirable, this issue does not support a grant of compassionate release because it is sadly the norm for this Court to sentence persons who have ill or otherwise disadvantaged family members.

Next, the Court has considered the defendant's assertion that he was not accurately informed as to the number of 924(c) charges against him in the indictment. There were three, but the defendant claims he understood there were four. He speculates that he could have obtained a more favorable plea agreement but for that misunderstanding. This contention is just that—speculation. There is no evidence that the prosecution would have offered a more favorable plea deal. Further, a criminal defendant has "no constitutional right to plea bargain." *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977). The government was therefore under no obligation to offer a more lenient plea, and this speculative claim does not support a grant of compassionate release.

Before addressing the remaining compassionate release arguments and the § 3553(a) factors, the Court will turn to a review of the defendant's background and the nature and circumstances of the instant offenses. Of course, the § 3553(a) factors and a movant's burden of showing "extraordinary and compelling reasons" are distinct steps in a court's compassionate release analysis. However, particularly in this case, the facts pertinent to those two steps significantly overlap.

The defendant was charged in 18 counts of the indictment: eight methamphetamine offenses; three § 924(c) counts; five counts of being a felon in possession of a firearm or

6

Case 3:03-cr-00151-RLJ-CCS   Document 71   Filed 02/22/21   Page 6 of 13   PageID #: 441

explosives; and two counts pertaining to explosive materials. [Presentence Investigation Report ("PSR"), ¶¶ 1-18].[2] The defendant pled guilty to two methamphetamine counts (One and 15) and two § 924(c) counts (Four and 16). [Doc. 34]. Count One carried a mandatory minimum 120-month sentence. Under then-current law, Count Four required an additional consecutive 60-month sentence and Count 16 required an additional consecutive 300-month sentence. *See* 18 U.S.C. § 924(c)(1)(A)(i), (C)(i) (2003).

How did the defendant amass so many charges in this case? First, law enforcement executed a search warrant at the residence of his codefendant on August 19, 2003, due to the suspected presence of a methamphetamine lab. [PSR, ¶ 29]. Shortly thereafter, the defendant and his cohort returned to the residence in a truck driven by the defendant. [*Id.*]. The defendant then attempted to flee in the truck, "nearly striking one officer with his vehicle, then hit a parked vehicle and drove through a fence into a field." [*Id.*]. The defendant escaped on foot, leaving behind the truck which contained ammunition and meth lab components. [*Id.*, ¶¶ 29-30]. A loaded semiautomatic pistol was found close by. [*Id.*, ¶ 30].

Officers spotted the defendant again on September 20, 2003. [*Id.*, ¶ 32]. Again, the defendant was driving a truck and, again, he fled from the police. [*Id.*]. The defendant eventually drove off the road and escaped on foot. [*Id.*]. The vehicle he left behind contained meth lab components, ammunition, and a rifle. [*Id.*]. Additionally, as he ran away, the defendant discarded a loaded semiautomatic pistol. [*Id.*].

---

[2] The "explosive materials" appear to have been a detonator cord and blasting caps. [PSR, ¶ 33].

The defendant was ultimately arrested on September 24, 2003. Law enforcement located him at a market. [*Id.*, ¶ 33]. For reasons not made clear in the record, officers "opened fire and defendant Coon was shot in the wrist and the head." [*Id.*]. He was in possession of two pistols, and there was methamphetamine, meth lab components, and another firearm in his car. [*Id.*]. The defendant's multiple § 924(c) charges—the drivers of his extraordinary sentence in this case—were a result of his repeated decisions to evade arrest, as each 924(c) count was based on the firearms found at each encounter summarized above.

The defendant's prior criminal history included traffic and controlled substance offenses. [*Id.*, ¶¶ 54-56]. At the time of his arrest in this case, the defendant was on probation for one of the prior drug convictions and had been in absconder status since at least June 1, 2003. [*Id.*, ¶ 56]. His probation in that case was revoked on October 30, 2003, and, according to the PSR, he was eligible for parole in 2005. [*Id.*]. Pending at the time of sentencing in this case were state charges directly related to his federal indictment. [*Id.*, ¶ 60]. Neither the revocation sentence nor the pending charges were addressed in this Court's judgment. [Doc. 40].

According to the PSR, the defendant's substance abuse history dates back to age 11. [PSR, ¶ 79]. He "used methamphetamine for a year straight until he was arrested." [*Id.*]. His employment experience was in masonry and construction. [*Id.*, ¶ 82].

The defendant was sentenced by this Court in November 2004. According to the BOP's SENTRY Report, he was not transferred to BOP custody until December 13, 2007, undoubtedly due to the pending state probation violation and the pending charges related

8

to this case.

SENTRY lists only one disciplinary sanction in the years since. Shortly after starting his time at the BOP, the defendant was disciplined for his part in a fistfight. There has been no further sanctioned misconduct.

According to SENTRY, the defendant is employed through UNICOR. SENTRY lists approximately 20,000 hours of educational, vocational, and apprenticeship programming completed by the defendant. The BOP scores him as having a low risk of recidivism.

Appended to the defendant's motion are numerous letters of support and positive work evaluations. The Court has read each of these documents and will note two particular threads herein. First, UNICOR documentation from 2013 through 2016 states that the defendant regularly "exhibits organizational and motivational skills that make him a highly valued worker, and he is a valuable asset to this factory." [Doc. 65, Ex. C]. Because "[h]e is very proficient at his assigned duties and his work ethic makes him an asset to UNICOR," the defendant was recommended for a pay bonus "[t]o encourage like performance by other inmates." [*Id.*]. At a time of job cuts, due to his skills the defendant was "retained ahead of other mechanics that may have more longevity." [*Id.*].

The Court also notes the nearly 20 letters submitted by fellow inmates. [*Id.*, Ex. G]. These letters are particularly persuasive because they are not "cookie cutter" or form submissions. Instead, each writer expresses in his own words how the defendant as been a personal and/or vocational mentor to the writer. These letters are consistent with the four certificates of achievement the defendant has received for tutoring, instructional skills, and "his efforts to teach others." [*Id.*].

9

Next, the Court recognizes the defendant's argument that if he were sentenced today for the same counts of conviction (or even for an additional 924(c) count), he would receive a significantly lower term of imprisonment. *See* Fair Sentencing Act of 2018, § 403, Pub. L. No. 115-391, 132 Stat. 5194. However, Section 403 of the First Step Act applies only to persons who had not yet been sentenced as of Act's enactment date – December 21, 2018. *See* 132 Stat. 5194, 5222. The Court will not speculate as to what sentence the defendant might possibly receive today because it is unknown what plea agreement—if any—the United States might offer under current law given the charged offenses. Further, this Court generally declines to find that Section 403 of the First Step Act constitutes extraordinary and compelling grounds for compassionate release. On the facts of the instant case, as will be addressed further below, the Court nonetheless notes the equitable consideration that the defendant received 30 years' imprisonment for two 924(c) convictions but today would only receive 15 years if convicted on all three of his 924(c) counts.

Lastly, the Court has considered the defendant's complaint that his attorney should have asked for a recommendation of concurrent sentencing with his pending state charges. That is an issue that the defendant should have raised in a petition under 28 U.S.C. § 2255, and the time for doing so has long passed. That said, the Court recognizes the equities of this issue. The defendant was arrested by local authorities on September 24, 2003, for the conduct which formed the basis of his federal prosecution. He was sentenced federally in November 2004 but did not begin his federal sentence until December 2007—more than four years after his arrest. Neither the PSR nor the broader record explains how much of

10

that time was credited to his pending state probation revocation versus his pending related state charges. Regardless, it is clear that he spent four plus years in state custody for conduct occurring during his meth-fueled summer of 2003, the same time period in which his federal offenses were committed.

As summarized herein, the Court has considered the relevant § 3553(a) factors, the facts of this case, the defendant's history and characteristics, and the arguments raised in the instant motion. Having done so, the Court finds extraordinary and compelling reasons justifying the requested compassionate release.

The defendant's lengthy federal sentence is largely based on his multiple § 924(c) charges which resulted from his decision to repeatedly flee arresting officers. Additionally, the defendant's methamphetamine manufacture undoubtedly caused great harm to the community. Aside from his 924(c) convictions, however, it is noted that the PSR assigned a total offense level of 25 and a criminal history category of III—considerably lower numbers than what this Court traditionally sees with defendants facing harsh sentences. Also, as to the 924(c) conduct, it appears that the defendant abandoned or discarded his firearms rather than actively employing them.

Regardless, a harsh sentence was called for in this case. The Court concludes that a harsh sentence has indeed been served, and it has been served as admirably as could ever have been hoped.

Without consideration of good time credit, the defendant has been in state or federal custody for more than 17 years. During his federal time, the defendant has plainly taken full advantage of the rehabilitative programming offered by the BOP and has meaningfully

11

mentored countless others. At sentencing, the undersigned encouraged the defendant not only to fully participate in the programs offered by the BOP but also to "[w]ork hard on helping others." [Doc. 65, Ex. F]. He has clearly done both, and to an extent this Court could barely have contemplated.

There have been no disciplinary sanctions since early 2008. The BOP considers the defendant to present a low risk of recidivism. He has submitted a proposed release plan, intending to live with his mother. At the Court's request, the probation office of this district has investigated the proposed release plan and has found it to be acceptable. The defendant is a skilled and motivated worker, and the many letters of community support appended to his motion indicate that he should have little trouble finding immediate employment. [Doc. 65, Ex. E].

The facts of this case indicate that the defendant has been adequately deterred and now poses minimal risk to the community. A net term of eight years' supervised release remains in effect. Although the current prison sentence is not set to expire until 2041, the Court finds that factor, and any resulting sentencing disparity, to be substantially outweighed by the defendant's unique post-offense rehabilitation and the sentencing considerations discussed herein.

Having considered the relevant § 3553(a) factors, the facts of this case, the defendant's history and characteristics, and the arguments of the parties, the Court finds extraordinary and compelling reasons justifying the requested compassionate release. The Court concludes that continued incarceration would not serve the goals of sentencing as set forth in the § 3553(a) factors.

12

Case 3:03-cr-00151-RLJ-CCS   Document 71   Filed 02/22/21   Page 12 of 13   PageID #: 447

## III.  CONCLUSION

As provided herein, the defendant's motion for compassionate release [doc. 65] will be granted.  While on supervised release, the defendant shall be subject to the following additional special condition of supervision:

1. The defendant shall submit his person, property, house, residence, vehicle, papers, computers [as defined in 18 U.S.C. § 1030(e)(1)], other electronic communications or data storage devices or media, or office, to a search conducted by a United States Probation Officer or designee. Failure to submit to a search may be grounds for revocation of release. The defendant shall warn any other occupants that the premises may be subject to searches pursuant to this condition. An officer may conduct a search pursuant to this condition only when reasonable suspicion exists that the defendant has violated a condition of his supervision and that the areas to be searched contain evidence of this violation. Any search must be conducted at a reasonable time and in a reasonable manner.

An order consistent with this opinion will be entered.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge